OPINION
Defendant-appellant, Michael D. Pardon, appeals his convictions for murder and attempted murder in the Warren County Court of Common Pleas. Based on the reasons that follow, the trial court's judgment is affirmed.
Appellant and his wife, Shirley Pardon, were employed at the Digitron Corporation in Warren County, Ohio. On March 24, 2000, appellant, while at work, learned that his wife was having an affair with a co-worker. Upon hearing this, appellant left Digitron, went home, obtained a loaded handgun, and returned to work. There, he fired a total of eight shots. One shot hit and killed his wife; one shot struck and injured a co-worker, Michael Allen; and appellant aimed one shot at, but missed, another co-worker, Charles Weaver. Immediately after the shooting, appellant attempted to flee the scene, but a Digitron employee detained him until police arrived.
On April 17, 2000, appellant was indicted on one count of aggravated murder in violation of R.C. 2903.01(A) and two counts of attempted murder in violation of R.C. 2923.02. All three counts had firearm specifications pursuant to R.C. 2941.145. At an August 18, 2000 hearing, appellant pled guilty to a reduced charge of murder in violation of R.C.2903.02(A) and two counts of attempted murder, along with three firearm specifications. Appellant was sentenced to a total of twenty-four years to life in prison.
Appellant has raised a single assignment of error on appeal, claiming that he received ineffective assistance of counsel during the plea process. Specifically, appellant claims that his trial counsel was ineffective because counsel advised appellant to plead guilty to one reduced charge of murder and the two charges of attempted murder. Appellant asserts that had he pled not guilty, he would have prevailed at trial.
The test for determining whether a defendant had ineffective assistance of counsel is set forth in Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052. This test requires the defendant to show that counsel's performance was deficient in that it fell below an objective standard of reasonableness and that this deficient performance prejudiced the defense. Id. at 687, 104 S.Ct. at 2064. A defendant's failure to satisfy one part of the Strickland test negates a court's need to consider the other. Strickland at 697, 104 S.Ct. at 2069.
It is well-established that a guilty plea waives the right to claim that the accused was prejudiced by ineffective assistance of counsel, except to the extent that the defects complained of caused the plea to be less than knowing and voluntary. State v. Spates (1992),64 Ohio St.3d 269, 272-273. When a criminal defendant has admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. Tollett v. Henderson (1973), 411 U.S. 258, 267,93 S.Ct. 1602, 1608.
The crucial inquiry in the instant cause is whether defendant's plea of guilty constituted a knowing, intelligent and voluntary waiver of his right to trial. Spates at 272. This inquiry entails a review of the record to ensure that Crim.R. 11 was followed by the trial court upon defendant's submission of the guilty plea. Crim.R. 11 requires that a trial judge, prior to accepting a defendant's guilty plea, must determine that the defendant is pleading guilty voluntarily with an understanding of the nature of the charges and of the maximum penalty involved, probation ineligibility, if applicable, effect of the plea, and the rights being waived.[1]
A review of the record leads us to conclude that before the trial court accepted appellant's guilty pleas, appellant was afforded a full hearing in compliance with Crim.R. 11. The trial court engaged in a lengthy and thorough colloquy with appellant. The trial judge explained to appellant that by pleading guilty, appellant was waiving his right to a trial by either a jury or a judge. The trial judge described the statutory and constitutional rights that appellant was relinquishing: that the burden of proof fell upon the state in a trial, and that in order for appellant to be convicted of the charges, the jury must agree unanimously. The trial judge explained the penalty appellant faced in entering a guilty plea. At least twice the trial judge told appellant that he would face eighteen years or more for the murder and gun specification charges, as well as additional time for the attempted murder charges. The trial judge asked appellant about his age, education, and employment. The trial judge even told appellant "[i]f you have any doubts or questions whatsoever, talk it over with your attorney." Appellant did confer with his attorney but still chose to plead guilty and the trial court accepted the plea. In light of all of the foregoing, we find that the evidence shows that appellant's plea was made knowingly, voluntarily, and intelligently.
In order to prove a claim of ineffective assistance of counsel in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. Hill v. Lockhart
(1995), 474 U.S. 52, 59, 106 S.Ct. 366, 370. Appellant argues that the facts of this case more readily support a lesser charge of voluntary or involuntary manslaughter rather than a murder charge. R.C. 2903.03, which defines voluntary manslaughter, states in relevant part that "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another." R.C.2903.03(A). R.C. 2903.04, which defines involuntary manslaughter, states in relevant part that "[n]o person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony [or as the] proximate result of the offender's committing or attempting to commit a misdemeanor of the first, second, third, or fourth degree or a minor misdemeanor." R.C. 2903.04(A)-(B). Based on the findings of a psychiatric report, appellant asserts that he acted in a fit of rage or passion, was suicidal after hearing of the affair, and that he lacked intent to kill his wife.
The distinction between aggravated murder and murder is that aggravated murder involves purposeful killing "with prior calculation and design."State v. Grasa (June 10, 1996), Butler App. No. CA94-12-231, unreported, at 11. Although this phrase is not defined in the Revised Code, the Ohio Supreme Court has stated:
 Where evidence adduced at trial reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified.
State v. Cotton (1978), 56 Ohio St.2d 8, paragraph two of the syllabus.
The Ohio Supreme Court has noted that there is no "bright-line test that emphatically distinguishes between the presence or absence of prior calculation and design." State v. Taylor (1997), 78 Ohio St.3d 15, 20, certiorari denied (1997), 522 U.S. 851, 118 S.Ct. 143. However, precedent reveals that Ohio courts have upheld aggravated murder convictions in cases involving fact scenarios in which there was a very limited opportunity for prior calculation and design. See, e.g.,Taylor; State v. Claytor (1991), 61 Ohio St.3d 234 (after being detained in parking lot by unarmed Veterans Administration Medical Center guards, appellant shot one guard twice in the face, and then chased after a fleeing guard to kill him); State v. Robbins (1979), 58 Ohio St.2d 74
(following an argument, appellant first punched victim, then retrieved a sword-like weapon and stabbed victim).
In Taylor, the defendant and his girlfriend went to a bar where the victim, the girlfriend's ex-boyfriend, was also spending the evening. The defendant and the victim engaged in a confrontation about whose choice of music the girlfriend was going to play at the jukebox, as well as an argument about how much money each man had in his pocket. As the couple was leaving, appellant fired seven times in the victim's direction, hitting him three times. The court determined that the defendant acted with prior calculation and design, which supported the aggravated murder conviction.
The facts of the case before the court today strongly suggest appellant was acting purposely and with prior calculation and design. Appellant left work, went home, found a gun, ensured it was loaded, and returned to work. During this time, he had the opportunity to "cool off," and arguably was not acting in a fit of passion. The multiple shootings, at multiple victims, suggests that appellant intended to purposely kill another. The fact that appellant did not shoot himself, nor threaten to do so, undermines his suicidal argument. Finally, appellant's attempt to flee the scene suggests that appellant knew of the serious consequences of his actions. Based on these facts, there is a reasonable probability that had the case gone to trial, the jury would have found appellant guilty of aggravated murder. Although appellant speculates that a jury could have found him guilty of manslaughter, because it is at least equally possible that a jury would have found appellant guilty of aggravated murder, we cannot find that counsel erred by advising appellant to plead guilty to a reduced charge of murder.
Based upon these facts, we find that appellant cannot establish that his counsel's performance was deficient or that he was prejudiced by counsel's performance. Considering the facts of the case and the circumstances leading up to the shootings, appellant gained a significant benefit from defense counsel's advice to plead guilty to murder and avoid the aggravated murder charge. Under the circumstances, counsel's advice to plead guilty to murder, attempted murder, and three firearm specification represents arguably sound trial strategy and was not ineffective assistance. We find that appellant was not denied effective assistance of counsel. Appellant's assignment of error is overruled.
Judgment affirmed.
POWELL, J., concurs.
WALSH, J., concurs in judgment only.
[1]
 In felony cases, the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
 (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
 (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
 (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.
Crim.R. 11(C)(2)(a)-(c).